UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,               MEMORANDUM & ORDER
                                        11-CR-31(KAM)

                -against-

NEIL MESSINA,

                Defendant.
---------------------------X
**MATSUMOTO, United States District Judge**:

        Presently before the court are pretrial motions by
defendant Neil Messina ("Messina" or "defendant") seeking (i)
dismissal of Count One of the Indictment; (ii) suppression of
recordings obtained as a result of wiretaps; (iii) a bill of
particulars; and (iv) additional discovery.  For the reasons set
forth below, defendant's motions are denied.

<u>**BACKGROUND**</u>

        On January 12, 2011, Messina was charged in all eight
counts of an eight-count indictment alleging, *inter alia*, a
racketeering conspiracy, loansharking, and illegal gambling.
(*See* ECF No. 1, Sealed Indictment, filed 1/12/2011 ("Ind't");
*see also* ECF No. 2, Order to Unseal Indictment, filed
1/24/2011.)

        Count One charges Messina and John Porcello
("Porcello"), together with others, with a racketeering
conspiracy in violation of 18 U.S.C. § 1962(d), and alleges four

predicate acts. Racketeering Act One charges Messina with conspiring to rob and murder Joseph Pistone ("Pistone") on or about August 17, 1992. (ECF No. 1, Ind't ¶¶ 16-18.) Racketeering Act Two charges Messina with conspiring to use extortionate means to collect an extension of credit from John Doe #1 in or about and between December 2009 and March 2010. (*Id.* ¶¶ 19-21.) Racketeering Act Three charges Messina and Porcello with engaging in an illegal gambling business in or about and between April 2010 and December 2010. (*Id.* ¶¶ 22-24.) Racketeering Act Four charges Messina and Porcello with conspiring to use extortionate means to collect an extension of credit from John Doe #2 in or about and between April 2010 and January 2011. (*Id.* ¶¶ 25-29.)

Count Two charges Messina, Nicolo Valenti, and Benito Valenti with conspiring to use extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of 18 U.S.C. § 894(a)(1). (*Id.* ¶¶ 30-31.) Count Three charges Messina and Porcello with using wire communication facilities to transmit in interstate commerce information in the placing of bets and wagers on one or more sporting events and contests, in violation of 18 U.S.C. § 1084(a). (*Id.* ¶¶ 32-33.) Count Four charges Messina and Porcello with using the mail and one or more facilities in interstate commerce, with the intent to promote, manage, establish, carry on, and facilitate an

illegal gambling business, and thereafter promoting, managing, establishing, carrying on, and facilitating such unlawful activity, in violation of 18 U.S.C. § 1952(a)(2)(A). (*Id.* ¶¶ 34-35.) Count Five charges Messina and Porcello with conspiring to make an extortionate extension of credit to John Doe #2, in violation of 18 U.S.C. § 892(a). (*Id.* ¶¶ 36-37.) Count Six charges Messina and Porcello with making an extortionate extension of credit to John Doe #2, in violation of 18 U.S.C. § 892(a). (*Id.* ¶¶ 38-39.) Count Seven charges Messina and Porcello with conspiring to use extortionate means to collect and attempt to collect an extortionate extension of credit from John Doe #2, in violation of 18 U.S.C. § 894(a)(1). (*Id.* ¶¶ 40-41.) Count Eight charges Messina and Porcello with using extortionate means to collect and attempt to collect an extension of credit from John Doe #2, in violation of 18 U.S.C. § 894(a)(1). (*Id.* ¶¶ 42-43.)

On August 1, 2011, Nicolo Valenti and Benito Valenti pled guilty to Count Five. On August 2, 2011, Porcello pled guilty to Count Two.

During a status conference on September 8, 2011, Messina's counsel sought leave to file an omnibus motion regarding numerous pretrial matters. (*See* Minute Entry dated 9/8/2011.) The motions were filed on December 5, 2011. (*See* ECF No. 117, Notice of Motion, filed 12/5/2011; ECF No. 118,

Declaration of Gerald J. McMahon, filed 12/5/2011 ("McMahon Decl."); ECF No. 119, Defendant Neil Messina's Memorandum of Law in Support of His Motion for Omnibus Relief, filed 12/5/2011 ("Def. Mem.").)  The government filed its opposition on January 10, 2012.  (*See* ECF No. 132, The Government's Memorandum of Law in Opposition to the Defendant's Pretrial Motion, filed 1/10/2012 ("Gov't Opp.").)  Defendant filed a reply on January 17, 2012.  (*See* ECF No. 138, Reply to Response, filed 1/17/2012 ("Def. Reply").)  At the court's request, the parties filed supplemental submissions on February 3, 2012.  (*See* ECF No. 143, Defendant's Response in Support re Motion for Bill of Particulars, filed 2/3/2012 ("Def. Response"); ECF No. 144, Government's Response in Opposition re Motion for Bill of Particulars, filed 2/3/2012 ("Gov't Response").)  The court held oral argument on the motions on February 8, 2012.

## DISCUSSION

### I.   Motion to Dismiss Count One of the Indictment

Defendant seeks dismissal of Count One of the Indictment, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B).  Defendant argues that Count One fails sufficiently to allege a violation of 18 U.S.C. § 1962(d) in that it fails to discuss defendant's "role in the La Cosa Nostra Enterprise (as opposed to the Bonnano [sic] Family)"; fails to plead a "common course of conduct or unity of purpose . . . with respect to the

4

charged defendants"; and "fails to show any meaningful relationship between the four racketeering acts defendant is alleged to have committed." (ECF No. 119, Def. Mem. at 3-4.)

### a. Legal Standard

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1); *see United States v. Fruchter*, 104 F. Supp. 2d 289, 296 (S.D.N.Y. 2000). It is well settled that "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert. denied*, 500 U.S. 926 (1992). To survive a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3), the indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stavroulakis*, 952 F.2d at 693 (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832 (1975)).

Pursuant to 18 U.S.C. § 1962(d), the statute under which defendant is charged in Count One, it is "unlawful for any

person to conspire to violate" the substantive provisions of 18 U.S.C. § 1962(c), which, in turn, makes it unlawful for "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To satisfy the "pattern of racketeering activity" element, the statute requires "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

    b. **Application**

        Count One contains all the essential elements of the charged racketeering conspiracy. It identifies and describes the racketeering enterprise as La Cosa Nostra, a group that operated through five organized crime families, including the Bonanno and Genovese crime families. (ECF No. 1, Ind't ¶¶ 1-11, 14-15.) It also alleges that defendant was an associate within the Bonanno organized crime family and associated with La Cosa Nostra. (*Id*. ¶¶ 12, 15.) Count One tracks the statutory language of 18 U.S.C. § 1962(c), and sets forth the time and place of the alleged crime. In particular, paragraph 15 of the Indictment alleges:

> In or about and between January 1992 and
> January 2011 . . . within the Eastern
> District of New York and elsewhere, the

6

> defendants Neil Messina and John Porcello .
> . . together with others, being persons
> employed by and associated with La Cosa
> Nostra, an enterprise that engaged in, and
> the activities of which affected, interstate
> and foreign commerce, did knowingly and
> intentionally conspire to violate Title 18,
> United States Code, Section 1962(c), that
> is, to conduct and participate, directly and
> indirectly, in the conduct of the affairs of
> that enterprise through a pattern of
> racketeering activity, as defined in Title
> 18, United States Code, Sections 1961(1) and
> 1961(5), consisting of the racketeering acts
> set forth below.

(*Id.* ¶ 15.)  Further, Count One charges that "[e]ach defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise" (*id.*), and sets forth four racketeering acts between 1992 and 2011 that defendant allegedly agreed that he and/or his co-conspirators would commit (*id.* ¶¶ 16-29).  Each of these four predicate acts is alleged to have been committed in furtherance of the enterprise's principal purpose, namely, "to generate money for [the enterprise's] members and associates."  (*Id.* ¶ 8.)  Racketeering Acts Two, Three, and Four, are alleged to have occurred within ten years of each other.  (*Id.* ¶¶ 19-29.)

Defendant's assertions that the Indictment fails to discuss his role in the La Cosa Nostra enterprise and fails to plead a "common course of conduct or unity of purpose" are incorrect.  As noted, the Indictment clearly identifies the alleged enterprise and states that defendant and his co-

defendant were associates of certain organized crime families through which La Cosa Nostra operated. Further, the Indictment states that "[t]he principal purpose of La Cosa Nostra and each of its crime families was to generate money for its members and associates." (*Id.* ¶ 8.) These specific allegations adequately "inform the defendant of the charges he must meet" and provide him with enough detail to enable him to plead double jeopardy in any future prosecution based on the same events. *Stavroulakis*, 952 F.2d at 693. Thus, the language of Count One is sufficient to allege a violation of 18 U.S.C. § 1962(d). *See United States v. Torres*, No. S2 94 Cr. 466, 1995 U.S. Dist. LEXIS 5853, at *6 (S.D.N.Y. May 3, 1995) (finding sufficient indictment that tracked the language of the statute).

Moreover, defendant's arguments that the Indictment "fails to show any meaningful relationship between the four racketeering acts" and "attempt[s] to rope together a series of separate mini-conspiracies committed by isolated actors" are premature, as they confuse the standards of pleading with standards of proof. (ECF No. 119, Def. Mem. at 4.) In essence, rather than challenging the sufficiency of the Indictment alone, defendant's arguments focus on whether the prosecution will be able to prove a racketeering "enterprise" and a "pattern of

racketeering activity" at trial.[1]

It is well settled that "an indictment that is valid on its face . . . may not be dismissed on the ground that it is based on inadequate or insufficient evidence." *Fruchter*, 104 F. Supp. 2d at 298; *accord United States v. Reale*, No. S4 96 Cr. 1069, 1997 U.S. Dist. LEXIS 14167, at *18 (S.D.N.Y. Sept. 17, 1997). "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . , the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment." *United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) (holding that the district court erred in dismissing the indictment based on insufficiency of the evidence); *accord United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 444, 448 (D. Conn. 2002) ("A technically sufficient indictment is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." (internal quotation marks omitted)). Further, "whether the evidence in a case establishes single or multiple conspiracies is a question of

---

[1] Indeed, defense counsel's reliance during oral argument on the Second Circuit's recent decision in *United States v. Cain*, Nos. 09-0707-cr(L), 09-2643-cr(CON), 10-0240(CON), 2012 U.S. App. LEXIS 1772 (2d Cir. Jan. 31, 2012) is misplaced. In *Cain*, the Second Circuit reaffirmed that the government must prove at trial – and the jury must find – that predicate acts in a racketeering conspiracy are related to each other ("horizontal relatedness") and related to the enterprise ("vertical relatedness"). *Id.* at *25. The court's decision, however, was limited to the "context of sufficiency-of-the-evidence" presented at trial, *id.* at *26, and did not address the sufficiency of the allegations in the indictment.

fact to be resolved by a properly instructed jury." *Torres*,
1995 U.S. Dist. LEXIS 5853, at *6 (quoting *United States v.
Friedman*, 854 F.2d 535, 561 (2d Cir. 1988), *cert. denied*, 490
U.S. 1004 (1989)).  Thus, if defendant wishes to challenge the
sufficiency of the government's evidence, he must wait until
after the government has presented its case, and then he may
file a motion for judgment of acquittal pursuant to Federal Rule
of Criminal Procedure 29.  *United States v. Cassese*, 273 F.
Supp. 2d 481, 484-85 (S.D.N.Y. 2003); *accord Fruchter*, 104 F.
Supp. 2d at 298.

Accordingly, defendant's motion to dismiss Count One
of the Indictment for failure to allege an offense is denied.

## II.  Motion to Dismiss Racketeering Act One of Count One of the Indictment

Defendant asserts that Racketeering Act One of Count
One of the Indictment, which alleges a conspiracy to rob and
murder Joseph Pistone, should be dismissed pursuant to Federal
Rule of Criminal Procedure 12(b)(3)(A) and the Due Process
Clause of the Fifth Amendment, as a result of pre-indictment
delay.[2]  According to the Indictment, the robbery and murder
alleged in Racketeering Act One occurred "[o]n or about August
17, 1992," over 18 years before defendant was charged on January

---

[2] In addition, Federal Rule of Criminal Procedure 48(b) provides, in relevant part, "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . presenting a charge to a grand jury."

12, 2011.  Defendant asserts that at least six years ago, a
cooperating witness informed the government that defendant was
involved in that criminal activity.  (ECF No. 119, Def. Mem. at
5; ECF No. 118, McMahon Decl. ¶ 15.)

    a.  **Legal Standard**

        A defendant seeking dismissal of an indictment based
on pre-indictment delay must show that (1) the defendant
suffered actual and substantial prejudice as a result of the
delay; and (2) the government intentionally caused the delay in
order to obtain a "tactical advantage" over the defendant.
*United States v. Marion*, 404 U.S. 307, 324 (1971); *see also*
*United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999)
("An indictment brought within the time constraints of the
statute [of limitations] may nevertheless violate due process
where pre-indictment delay has been shown to cause 'substantial
prejudice' to the defendant's ability to present his defense and
'the delay was an intentional device to gain [a] tactical
advantage over the accused.'" (quoting *Marion*, 404 U.S. at
324)); *United States v. Carbonaro*, No. S5 02 CR 743, 2004 U.S.
Dist. LEXIS 19895, at *4 (S.D.N.Y. Sept. 30, 2004) ("Proof of
prejudice alone is insufficient to establish a due process
violation because 'the inquiry focuses not only on prejudice to
the accused but also on the reasons for the claimed oppressive
delay.'" (quoting *United States v. Birney*, 686 F.2d 102, 105 (2d

Cir. 1982)).  Moreover, the "heavy burden" of establishing these
necessary elements rests with the defendant; proof of such harm
must be definite rather than speculative.  *Cornielle*, 171 F.3d
at 752; *Birney*, 686 F.2d at 105-06.

> **b.  Application**

The essence of defendant's claim is that for at least
the last six years, the government has been in possession of
information that defendant was involved in the Pistone robbery
and murder, yet it chose not to charge him until January 2011.
Defendant argues that the government's six-year delay in filing
charges against him "has made the ability to mount a defense
problematic" (ECF No. 119, Def. Mem. at 5), and that in the
interim, "potential witnesses died or disappeared, and
recollections dimmed" (ECF No. 118, McMahon Decl. ¶ 19).

The fact that witnesses' memories dim over time,
however, is not "the sort of actual substantial prejudice that
predicates reversal for pre-indictment delay." *United States v.
Elsbery*, 602 F.2d 1054, 1059 (2d Cir.), *cert. denied*, 444 U.S.
994 (1979).  Further, although defendant has stated in the
abstract that his ability to mount a defense would be
"problematic" and that "potential" witnesses' memories have
dimmed, he has not specified whether or how the government's
purported delay has affected his ability to defend himself, nor
has he identified any potential witnesses who are no longer

available or stated what their testimony might be.  Defense counsel conceded at oral argument that he had not identified any such witnesses.  Thus, defendant has not satisfied his burden of showing actual or substantial prejudice as a result of any delay, and his motion must be denied.  *See Georgison v. Donelli*, No. 04 Civ. 1444, 2005 U.S. Dist. LEXIS 11363, at *23 (S.D.N.Y. June 9, 2005) ("The existence of the missing witnesses, without any details about the witnesses, the evidence they might provide, or evidence to corroborate their significance in the case, does not in itself demonstrate actual prejudice."); *United States v. Preslar*, 608 F. Supp. 986, 988 (N.D.N.Y. 1985) (holding defendant failed to meet his burden of showing actual prejudice where he "failed to offer any specific factual information to substantiate [his] claim" that certain material witnesses were no longer available).

Moreover, even if defendant had suffered actual prejudice from the pre-indictment delay, he has not satisfied the second requirement, that he show that the government intentionally delayed filing the Indictment in order to obtain a tactical advantage.  Defendant asserts that an improper purpose for the delay may be inferred from the government's efforts to persuade defendant to become a cooperating witness by purportedly threatening to charge him with the 1992 murder if he did not cooperate.  (ECF No. 119, Def. Mem. at 5-6; ECF No. 118,

13

McMahon Decl. ¶¶ 17-18.)  Defendant may not, however, meet his burden of proving the government's improper intent by relying on "an unavoidable deduction of deliberate delay."  *Carbonaro*, 2004 U.S. Dist. LEXIS 19895, at *6 (quoting *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990)).  Instead, defendant must come forward with evidence of the government's improper motive.

Nothing in the government's alleged course of action suggests the delay was an intentional device by prosecutors to put defendant at a tactical disadvantage.  On the contrary, by defendant's own assertions, the government delayed in prosecuting him while the parties attempted to negotiate a plea agreement that would include defendant's cooperation.  (*See* ECF No. 119, Def. Mem. at 5-6; ECF No. 118, McMahon Decl. ¶ 18.) Defendant has provided no evidence that he was coerced, and the fact that he ultimately declined to plead guilty and the government subsequently brought charges against him does not give the government a strategic advantage over defendant.  *See Georgison*, 2005 U.S. Dist. LEXIS 11363, at *29-30 (where there was no evidence of coercion, the court found no unconstitutional delay despite petitioner's argument that the timing of interrogation and indictment were tactical decisions by prosecutors in an attempt to coerce him into cooperating); *United States v. Gotti*, No. S4 02 CR 743, 2004 U.S. Dist. LEXIS 45, at *10 (S.D.N.Y. Jan. 5, 2004) (defendants' argument that

14

the government delayed prosecution in order to preserve a witness's credibility when he testified in a separate trial was unavailing because it failed to establish that the government acted intentionally to gain a tactical advantage over the *moving defendants*).

Moreover, the government asserts that the timing of the Indictment was determined by the government's need to continue its investigation. (ECF No. 132, Gov't Opp. at 11-12.) As support, the government notes that in previous submissions to the court, the government represented that during consensually recorded conversations in 2009 and 2010, defendant implicated himself in the 1992 murder. (*See id.* at 12; ECF No. 35, Motion to Modify Conditions of Release, filed 2/23/2011, at 2-3.) As the Supreme Court held in *United States v. Lovasco*, 431 U.S. 783 (1997), pre-indictment delay for the purpose of investigating a case is permissible, "even if [the] defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796. Accordingly, because defendant has not satisfied his burden of showing both actual prejudice and intentional strategic delay by the government, his motion to dismiss Racketeering Act One of Count One on the ground of pre-indictment delay is denied.

**III. Motion to Suppress the Contents of Intercepted Oral Communications**

Defendant seeks to suppress the contents of oral

communications intercepted pursuant to wiretap orders signed by
U.S. District Judge Allyne Ross on April 2, 2010 and May 4,
2010, respectively.  Defendant argues that the affidavits on
which the orders were based failed to meet the requirements set
forth in 18 U.S.C. § 2518 for authorizing the interception of
such communications.  (ECF No. 119, Def. Mem. at 6-10.)

   **a.   Legal Standard**

        Pursuant to 18 U.S.C. § 2518(1)(c), an application for
authorization to intercept wire, oral, or electronic
communications must be supported by an affidavit, which must
include "a full and complete statement as to whether or not
other investigative procedures have been tried and failed or why
they reasonably appear to be unlikely to succeed if tried or to
be too dangerous."  Further, 18 U.S.C. § 2518(3)(c) requires the
reviewing judge to determine, as a condition of authorizing the
surveillance, that "normal investigative procedures have been
tried and have failed or reasonably appear to be unlikely to
succeed if tried or to be too dangerous."  This requirement is
"designed to assure that wiretapping is not resorted to in
situations where traditional investigative techniques would
suffice to expose the crime."  *United States v. Kahn*, 415 U.S.
143, 153 n.12 (1974); *accord United States v. Concepcion*, 579
F.3d 214, 218 (2d Cir. 2009).

        However, the court need not satisfy itself that all

conceivable investigative techniques were attempted prior to resorting to electronic surveillance. "[T]he statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999) (quoting *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990) (alteration and quotation marks omitted)). "Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What [18 U.S.C. § 2518] envisions is that the showing be tested in a practical and commonsense fashion." *Concepcion*, 579 F.3d at 218 (quoting S. Rep. No. 90-1097 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2190). Nonetheless, "generalized and conclusory statements that other investigative procedures would prove unsuccessful" will not suffice. *United States v. Lilla*, 699 F.2d 99, 104 (2d Cir. 1983).

### b.  Application

The wiretap applications in this case were supported by the affidavits of Special Agent Lauren Regucci of the Federal Bureau of Investigation dated April 2, 2010 and May 4, 2010, respectively. (*See* ECF No. 134-1, Sealed Affidavit of Lauren Regucci in Support of Application, dated 4/2/2010 ("4/2/2010 Aff." or "April Affidavit"); ECF No. 142-1, Sealed Affidavit of

Lauren Regucci in Support of Application, dated 5/4/2010

("5/4/2010 Aff." or "May Affidavit").)  Both the April and May

Affidavits discussed several traditional investigative

techniques that were used during the investigation, including

conducting visual surveillance, installing a global positioning

device on a vehicle, using confidential sources and cooperating

witnesses, executing search warrants, and analyzing telephone

records, and explained the shortcomings of each of these

techniques.  (*See* ECF No. 134-1, 4/2/2010 Aff. ¶¶ 55, 57, 60,

61; ECF No. 142-1, 5/4/2010 Aff. ¶¶ 36, 37, 39, 42, 43.)  Both

Affidavits also discussed other methods that were considered,

including serving subpoenas on witnesses to testify before the

grand jury, offering immunity to witnesses who invoked their

Fifth Amendment right not to testify before the grand jury,

using undercover agents, interviewing the subjects of the

investigation, reviewing items recovered from the trash, and

serving subpoenas on financial institutions, and explained why

these techniques were not attempted.  (*See* ECF No. 134-1,

4/2/2010 Aff. ¶¶ 56, 58, 59, 62, 63; ECF No. 142-1, 5/4/2010

Aff. ¶¶ 38, 40, 41, 44, 45.)

        Defendant argues that the government has failed to

show that the more traditional investigative techniques were not

productive.  Specifically, defendant contends that "physical

surveillances <u>were</u> productive, and the agents had at least two

18

informants . . . who were in almost daily contact with defendant Messina." (ECF No. 119, Def. Mem. at 9 (emphasis in original); *see also* ECF No. 138, Def. Reply at 1.) Defendant also asserts that the statements in the affidavit were conclusory and "did not reveal any actual effort by the government to exhaust traditional investigative techniques prior to seeking the electronic eavesdropping order." (ECF No. 119, Def. Mem. at 9.) The court disagrees.

The April Affidavit clearly explained that even though visual surveillance was an important component of the investigation, this technique would not achieve the objectives of the investigation because prolonged or regular surveillance would be noticed by the subjects, causing them to become more cautious or to flee. (ECF No. 134-1, 4/2/2010 Aff. ¶ 55.) In support, the April Affidavit noted that members and associates of organized crime are taught how to avoid surveillance, and reported that one of the subjects of the investigation frequently traveled in other people's cars, thereby rendering useless a global positioning device installed on his vehicle and making traditional surveillance of that individual very difficult. (*Id.*)

Similarly, the May Affidavit detailed two instances in which agents attempted to conduct visual surveillance on defendant. (*See* ECF No. 142-1, 5/4/2010 Aff. ¶¶ 36-37.) The

May Affidavit also explained that although the agents observed certain subjects of the investigation conversing with each other, such information was "insufficient in itself to lead to any criminal charges, since association, standing alone, does not establish a crime." (*Id.* ¶ 36.) Further, as explained by the May Affidavit, "[e]ven when such individuals are surveilled, the substance or criminal nature of their conversations cannot be determined, which does not satisfy the goals of the investigation." (*Id.* ¶ 37.)

Further, both Affidavits described the limitations of using confidential sources and cooperating witnesses in its investigation. Specifically, the Affidavits noted that confidential sources who were willing to make recordings were not able to meet with certain important subjects of the investigation, that confidential sources who were able to meet with such persons were not willing to make recordings or testify, and that the cooperating witnesses had been disclosed and could no longer safely meet with members of organized crime. (*See* ECF No. 134-1, 4/2/2010 Aff. ¶ 57; ECF No. 142-1, 5/4/2010 Aff. ¶ 39.) Further, the Affidavits stated that although one confidential source was willing and in a position to make consensual recordings, that source's efforts had thus far been unsuccessful. (*Id.*)

When the government's efforts are considered in a

"practical and commonsense fashion," *Concepcion*, 579 F.3d at 218, it is clear that the Affidavits provide more than adequate reasons why other, traditional investigative techniques would not "suffice to expose the crime," *Kahn*, 415 U.S. at 153 n.12. *See United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977) (finding adequate the government's explanation that normal investigative techniques such as surveillance were ineffective because the subjects were "difficult to tail" in that they were "especially sensitive to police surveillance" and were "constantly changing routes"); *United States v. Wagner*, 989 F.2d 69, 74 (2d Cir. 1993) (finding sufficient affidavit stating that surveillance of the subject's house was difficult because of its rural location and the presence of dogs); *United States v. Gotti*, 771 F. Supp. 535, 546-48 (E.D.N.Y. 1991) (denying motion to suppress where affidavit explained that confidential sources were incapable of infiltrating crime family's inner circles and lacked access to meetings concerning the family, and that physical surveillance alone could not provide sufficient evidence of defendants' crimes). Thus, the court finds that Judge Ross properly authorized the April 2, 2010 and May 4, 2010 wiretaps pursuant 18 U.S.C. § 2518, and defendant's motion to suppress the wiretap recordings is denied.

## IV. Motion for a Bill of Particulars

Defendant seeks a bill of particulars identifying (i)

his alleged co-conspirators in Count One, Racketeering Acts One through Four (ECF No. 119, Def. Mem. at 12; ECF No. 138, Def. Reply at 2; ECF No. 118, McMahon Decl. ¶¶ 27-29); and (ii) his alleged victims, John Doe #1 and John Doe #2, in Count One, Racketeering Acts Two and Four (ECF No. 119, Def. Mem. at 12; ECF No. 118, McMahon Decl. ¶ 30). The government has agreed to provide defendant with the identities of the victims identified as "John Does" in the Indictment. (ECF No. 132, Gov't Opp. at 19.) Thus, the court need not address defendant's second request.

### a. Legal Standard

A defendant may seek a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) in order to (1) "identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial"; (2) "to prevent surprise"; and (3) "to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). The district court has discretion to decide whether to grant a bill of particulars. *Id.* (citing *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984)).

"A bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"

*United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Torres*, 901 F.2d at 234). Accordingly, the court may deny a motion for a bill of particulars "if the information sought by defendant is provided in the indictment or in some acceptable alternate form." *Bortnovsky*, 820 F.2d at 574; *see also United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003) (finding that no bill of particulars is warranted where "the Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them"); *United States v. Barnes*, 158 F.3d 662, 665-66 (2d Cir. 1998) (finding district court did not abuse its discretion by denying a bill of particulars where the government had already provided "extensive additional information" regarding defendants' alleged involvement in the charged offenses "so as to enable them to understand the nature of the charges against them, to prepare a defense, and avoid unfair surprise at trial").

Moreover, numerous courts in this Circuit have cautioned that "[t]he proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial . . . ." *United States v. Feola*, 651 F. Supp. 1068, 1131 (S.D.N.Y. 1987); *see also Torres*, 901 F.2d at 234 ("Acquisition of evidentiary detail is not the function of the bill of particulars."); *United States v.*

*Larracuente*, 740 F. Supp. 160, 163 (E.D.N.Y. 1990) ("A bill of particulars is not to be viewed as a discovery device to seek and compel disclosure of the Government's evidence prior to trial.").

Accordingly, "[t]he applicable standard for whether a bill of particulars should issue is not whether the information sought would be helpful to the defense, but whether it is necessary." *United States v. Batista*, No. 06-CR-265, 2009 U.S. Dist. LEXIS 27437, at *25 (E.D.N.Y. Mar. 31, 2009) (citation omitted); *see also Torres*, 901 F.2d at 234 ("The function of a bill of particulars is to provide [the] defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at the trial.") (emphasis added) (internal quotations omitted). In determining whether a defendant has shown such necessity, the trial court "must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery." *United States v. Solomonyan*, 452 F. Supp. 2d 334, 349 (S.D.N.Y. 2006) (citation omitted).

As this court has noted, "[t]here is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted." *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009); *accord United*

*States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) (noting that the Second Circuit has affirmed both denials and grants of requests for the identities of unindicted co-conspirators). Indeed, "[t]he Second Circuit has upheld decisions [both] granting and denying requests for the identity of co-conspirators." *United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) (collecting and comparing cases). As with any bill of particulars, the question is thus "whether the names of unindicted co-conspirators are necessary to prepare a defense and avoid surprise." *Solomonyan*, 452 F. Supp. 2d at 349. In deciding whether to grant requests for the identities of unindicted co-conspirators, courts in this Circuit have considered the following six factors:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government has otherwise provided adequate notice of the particulars; (4) the volume of pre-trial disclosures; (5) the potential danger to co-conspirators; and (6) the potential harm to the Government's investigation.

*Nachamie*, 91 F. Supp. 2d at 572.

### b. **Application**

After consideration of the six factors set forth in *Nachamie*, the court finds that a bill of particulars identifying defendant's unindicted co-conspirators is not necessary for defendant to prepare his defense and to avoid prejudicial

surprise at trial.

With respect to the first and second factors, each of the Racketeering Acts alleged in Count One is a discrete event with a limited number of participants. Racketeering Act One charges defendant with conspiring to commit a robbery and murder that occurred on a single day, August 17, 1992, at a single location. Although defendant asserts that the government's June 17, 2011 *Brady* letter "identified two very different sets of suspects" in the 1992 Pistone murder and that defendant "has no way of knowing" which set contains his alleged co-conspirators (ECF No. 143, Def. Response at 2), the court nevertheless finds that defendant has sufficient information to prepare his defense. Indeed, defendant admits that the government has already identified at least one of defendant's alleged co-conspirators in the robbery and murder. (*See* ECF No. 144, Gov't Response at 4; ECF No. 143, Def. Response at 1.) Moreover, although defendant denies any involvement in the events of August 17, 1992, the government has previously asserted that defendant was on the scene of the crime. (*See* ECF No. 35, Motion to Modify Conditions of Release, filed 2/23/2011, at 3 ("CW-1 asked if Messina had actually been at the situation, and Messina said yes."); ECF No. 35-3, Transcript of Criminal Cause for Detention Hearing before the Honorable Robert M. Levy, dated 2/16/2011, at 11 ("He was on the scene. He was I believe right

outside the home in a car.").)  Accordingly, it is not likely that defendant will be surprised at trial by the identity or number of his co-conspirators in Racketeering Act One.

Similarly, Racketeering Acts Two and Four, which charge defendant with conspiring to use extortionate means to collect loansharking debts, involved a small number of co-conspirators and took place over relatively brief periods of time, December 2009 to March 2010 and April 2010 to January 2011, respectively.  Racketeering Act Three charges defendant and one co-defendant with engaging in an illegal gambling business between April 2010 and December 2010.  Thus, because the scope and duration of the charged predicate acts were limited and the number of unindicted co-conspirators does not appear to be so large that defendant would be surprised by the identity of these persons, identification of defendant's co-conspirators is not necessary for defendant to prepare adequately for trial.  *See United States v. Kaplan*, No. 02-CR-883, 2003 U.S. Dist. LEXIS 21825, at *54 (S.D.N.Y. Dec. 5, 2003) (denying motion for bill of particulars based in part on "[t]he relatively limited breadth and scope of the conspiracy," which lasted two years and included eight overt acts).

The third and fourth factors - whether the government has provided adequate notice of the particulars and the volume of pretrial disclosures - also weigh against disclosure of

defendant's unindicted co-conspirators.  The government has
provided defendant with the New York City Police Department file
regarding the Pistone robbery and murder, as well as consensual
recordings of defendant discussing illegal gambling and
extortionate extensions of credit.  (*See* ECF No. 144, Gov't
Response at 5-8; ECF No. 97, Letter Providing Additional
Discovery, dated 8/10/2011; ECF No. 98, Letter Providing Pistone
Homicide File, dated 8/10/2011.)  The court finds that the
Indictment, as well as the pretrial discovery, which defendant
concedes is not overly burdensome, provide sufficient notice of
the charges defendant faces.  Although defendant may not know
the identity of every participant in the alleged conspiracy, he
has been "provided with sufficient information as to the nature
of the conspiracy and [his] role[] in it such that [he] can
prepare for trial even without that level of detailed
information."  *United States v. Gammarano*, No. 06-CR-0072, 2007
U.S. Dist. LEXIS 52059, at *46 (E.D.N.Y. July 18, 2007); *see
also United States v. Rodriguez*, No. 99 CR. 367, 1999 U.S. Dist.
LEXIS 15918, at *4-5 (S.D.N.Y. Oct. 13, 1999) (denying motion
for bill of particulars identifying co-conspirators where the
indictment coupled with discovery allowed defendant "both to
prepare his defense and to avoid prejudicial surprise at
trial").  Moreover, because the conspiracies alleged in this
case are not themselves complex, it is not likely that defendant

will be confused as to what exactly the government intends to prove at trial. *Cf. Kahale*, 789 F. Supp. 2d at 373 (granting defendants' motion for a bill of particulars identifying unindicted co-conspirators where the fraud charges facing defendants "carr[ied] a greater potential for unfair surprise at trial" in that they "may outwardly appear to be legitimate business communications").

Finally, and perhaps most significantly, pursuant to the fifth and sixth factors, the fact that defendant is charged with crimes of violence, including murder and extortionate collection of credit, weighs heavily against disclosure of the names of defendant's unindicted co-conspirators. *See United States v. Minaya*, 395 F. Supp. 2d 28, 37 (S.D.N.Y. 2005) ("[T]he Court is concerned with the potential danger to unnamed co-conspirators, given that this case involves allegations of violent crimes including murder."); *United States v. Columbo*, No. 04-CR-273, 2006 U.S. Dist. LEXIS 49255, at *23 (S.D.N.Y. July 18, 2006) (denying motion for bill of particulars where "some of the defendants allegedly have ties to the Columbo crime family and the charged offenses include extortion" and noting that "case law suggests that requests for bills of particulars have rarely been granted in cases involving defendants charged with violent offenses"); *United States v. Urso*, 369 F. Supp. 2d 254, 273 (E.D.N.Y. 2005) ("[D]efendants charged with extreme

acts of violence should not be granted early disclosure of unindicted co-conspirators."); *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) ("[T]he identities of unindicted co-conspirators have been disclosed primarily in cases in which violence was not alleged.").

Accordingly, defendant's motion for a bill of particulars identifying his unindicted co-conspirators is denied.

## V.  Additional Requests for Discovery

### a.  *Brady* and *Giglio* Material

Defendant seeks an order directing the government to disclose all *Brady* material immediately and all *Giglio* material at least 30 days before trial.  (ECF No. 118, McMahon Decl. ¶ 34; ECF No. 119, Def. Mem. at 15.)

It is well-established that "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa,* 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1972)).  The government, however, need not provide *Brady* and *Giglio* material immediately; instead, *Brady* and *Giglio* material must be disclosed "in time for its effective use at trial or at a plea proceeding." *Coppa*, 267 F.3d 132, 146 (2d Cir. 2001); *see also United States v. Palermo,* No. 11 Cr. 1199, 2001 U.S. Dist. LEXIS 1855, at *2 (S.D.N.Y.

2001) (*Giglio* impeachment material does not have to be produced "until after the relevant witness testifies."). At this time, defendant's requests for *Brady and Giglio* material are premature, as no trial date has been set. *See United States v. Chen*, No. S1 05 Cr. 938, 2007 U.S. Dist. LEXIS 57917, at *35-36 (S.D.N.Y. Aug. 1, 2007) (finding requests for *Giglio* and *Jencks Act* material premature because no trial date had been set).

Further, "pretrial motions for discovery pursuant to *Brady* should be denied when the Government has made a good faith representation to the Court and defense counsel that it recognizes and has complied with its *Brady* disclosure obligations." *United States v. Cook*, 348 F. Supp. 2d 22, 30 (S.D.N.Y. 2004) (citing cases). The government has represented to the court that it is aware of and will comply with its *Brady* and *Giglio* obligations. (ECF No. 132, Gov't Opp. at 23-24.) Based on the government's representations, and the current posture of this case, defendant's requests for *Brady* and *Giglio* material are denied without prejudice as premature.

b. **Jencks Act material**

Defendant seeks an order directing the government to produce Jencks Act material at least seven days before trial. (ECF No. 119, Def. Mem. at 17.) The Jencks Act provides that the government must produce prior statements of a witness only after that witness has testified at trial. *See* 18 U.S.C.

31

§ 3500(a).  Further, a district court may not mandate pretrial production of such material.  *See id.; accord Coppa*, 267 F.3d at 145-46 (holding that a district court's power to order pretrial disclosure is constrained by the Jencks Act, and a court which orders early disclosure of Jencks material exceeds its authority); *United States v. Marquez*, No. 91 CR 451, 1992 U.S. Dist. LEXIS 5247, at *19 (S.D.N.Y. Apr. 22, 1992) ("Rule 16(a)(2) explicitly provides that Rule 16 does not authorize the discovery of [statements of government witnesses], and under 18 U.S.C. § 3500, a District Court cannot order the disclosure of statements of such witnesses before their direct testimony at trial.").

Accordingly, defendant's request for Jencks Act material at this time is denied.

c. **Rule 404(b) evidence**

Defendant seeks an order directing the government to notify defendant at least 30 days before trial of any evidence of other crimes or bad acts that the government will seek to introduce at trial pursuant to Federal Rule of Evidence 404(b). (ECF No. 119, Def. Mem. at 16.)

Rule 404(b) requires the government to provide "reasonable notice in advance of trial, or during trial, if the court excuses pretrial notice on good cause shown" of its intent to use evidence of other crimes, wrongs, and bad acts.  Fed. R.

Evid. 404(b).  Although Rule 404(b) does not define what
constitutes "reasonable notice," notice of intent to use such
evidence is typically provided no more than two or three weeks
before trial.  *See Nachamie*, 91 F. Supp. 2d at 576-77; *see also
United States v. Ojeikere*, 299 F. Supp. 2d 254, 257 (S.D.N.Y.
2004) (collecting cases and observing that "[c]ourts in this
Circuit have routinely found that at least 10 business days
provides reasonable notice to a defendant under Rule 404(b)");
*United States v. Lily*, No. 94 Cr. 705, 1995 U.S. Dist. LEXIS 445
(S.D.N.Y. Jan. 19, 1995) (15 days before trial); *United States
v. Shteyman*, No. 10 CR 347, 2011 U.S. Dist. LEXIS 55202, at *24
(E.D.N.Y. May 23, 2011) (requiring government to provide
defendants with 404(b) evidence no later than 21 days prior to
trial in five-defendant case).  At this time, the court finds
that defendant's request is premature, as no trial date has been
set.

> **d.  Expert Witnesses**

Federal Rule of Criminal Procedure 16(a)(1)(G)
requires the government, at the defendant's request, to provide
the defendant a written summary of any expert testimony that the
government intends to use in its case in chief at trial.  Fed.
R. Crim. P. 16(a)(1)(G).

Defendant seeks an order, pursuant to Federal Rule of
Criminal Procedure 16(a)(1)(G), directing the government to

disclose forthwith, and at least 90 days before trial, written summaries of its expert testimony. (ECF No. 118, McMahon Decl. ¶ 33; ECF No. 119, Def. Mem. at 12-13.) Defendant asserts that, upon request, the government refused to produce such summaries. (ECF No. 118, McMahon Decl. ¶ 33.) In its opposition, the government notes that in a letter dated January 31, 2011, the government advised defendant that it would "comply with Fed. R. Crim. P. 16(a)(1)(G) by notifying [the defendant] in a timely fashion of any expert the government intend[ed] to call at trial and by providing [the defendant] with the expert's credentials and a summary of the expert's opinion." (ECF No. 132, Gov't Opp. at 24 n.5.)

In light of the government's representation, and the current posture of this case, the court expects that the government will comply timely with its disclosure obligations.

### e. List of trial exhibits and recordings the government intends to play at trial

Defendant seeks an order directing the government to identify the recordings that it intends to play at trial, and to provide transcripts of those recordings at least 15 days prior to trial. (ECF No. 119, Def. Mem. at 16.) Similarly, defendant seeks an order directing the government to produce a list of trial exhibits 15 days before trial. (*Id.*)

The exchange of trial exhibits is generally an issue

resolved in the court's pretrial scheduling order.  As no trial date has yet been set, defendant's request is premature.

## f.   Statements of alleged co-conspirators who are not government witnesses

Defendant seeks an order directing the government to disclose the written or recorded statements of any alleged co-conspirators, who are not government witnesses, made during the course of, and in furtherance of the charged conspiracy.  (ECF No. 118, McMahon Decl. ¶ 31.)

It is well established that the "statements of co-conspirators whom the government does not intend to call as witnesses at trial are not discoverable."  *United States v. Yarborough*, No. 06-CR-190, 2007 U.S. Dist. LEXIS 23198, at *55 (W.D.N.Y. Mar. 28, 2007) (citing *In re United States*, 834 F.2d 283, 286 (2d Cir. 1987)); *United States v. Piedrahita*, No. 91 Cr. 652, 1992 U.S. Dist. LEXIS 3442, at *15 (S.D.N.Y. Mar. 19, 1992) ("[I]f the Government does not introduce testimony concerning co-conspirators' statements, the statements are not subject to disclosure, either under Rule 16 or the Jencks Act, unless they constitute *Brady* material.").  To the extent that such statements may constitute *Brady* material, the government has represented that is aware of its obligations and will comply with them.

\*     \*     \*

Accordingly, for the foregoing reasons, defendant's motions for additional discovery are denied, without prejudice to a timely motion should the government fail to meet its ongoing discovery and notice obligations.[3]

## CONCLUSION

For the foregoing reasons, defendant's pretrial motions are denied.


**SO ORDERED.**

Dated: February 13, 2012
      Brooklyn, New York

/s/
_____   _____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

---

[3] In the Declaration submitted in support of defendant's motion, defense counsel stated that he sought disclosure of four eavesdropping warrants, with supporting papers, in which defendant was a subject interceptee. (ECF No. 118, McMahon Decl. ¶ 32.) However, neither defendant's motion nor his supporting papers refers to this request or provides any support for such a request. Accordingly, the request is denied, with leave to renew upon a sufficient showing by defendant.